### UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF LOUISIANA

**KELLY GRAY, ET AL.**

                             **CIVIL ACTION**

**VERSUS**

                             **NO. 21-536-JWD-RLB**

**LOUISIANA DEPARTMENT OF PUBLIC
SAFETY & CORRECTIONS, ET AL.**

### RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 61) filed by defendants the Department of Public Safety and Corrections ("DPSC") and Darrel Vannoy (collectively "Defendants").[1]  Plaintiffs, Kelly Gray and Michael Foley, Individually and On Behalf of All Heirs-At-Law and Wrongful Death Beneficiaries of Shaquille Gray ("Gray"), Deceased and The Estate of Shaquille Gray (collectively, "Plaintiffs") oppose the motion. (Doc. 67.) Defendants have filed a reply. (Doc. 71.)  Oral argument is not necessary.  The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.  For the following reasons, the motion is granted.  All of Plaintiffs' claims will be dismissed without prejudice, but Plaintiffs will be given leave to amend to cure the deficiencies outlined in this ruling.

### I.    Relevant Factual Background

Shaquille Gray was a diagnosed schizophrenic. (*Sec. Am. Compl.* ("*SAC*") ¶ 7, Doc. 43.) On July 3, 2011, he was arrested and charged with robbery. (*Id.*)  Before trial, "substantial litigation ensued involving Mr. Gray's competency to stand trial," and, during that time, "he was diagnosed

---

[1] As will be explained below, DPSC and Vannoy are not the only defendants in this action, but the term "Defendants" shall be used to refer to them in this ruling.

with psychological and/or mental illness." (*Id.*)  "Despite the Court and State's recommendation for Mr. Gray to serve his sentence at an intensive treatment facility (for mental health reasons), Mr. Gray was sent to the Louisiana State Penitentiary in Angola, LA" ("LSP"). (*Id.*)  Plaintiffs claim that prison officials knew of Gray's diagnosis yet placed him in the general population of inmates instead of a segregated psychiatric or medical ward. (*Id.*)  Plaintiffs assert that, due to Defendants' misconduct, Gray was stabbed 20 times and murdered by fellow inmate Kenny Veal on September 1, 2020.  (*Id.*)  Veal was under the influence of drugs and armed with two knives—all of which were prohibited contraband. (*Id.*)

Plaintiffs (Gray's parents) brings this suit against the DPSC, Vannoy as the former warden of LSP, Attorney General Jeff Landry, and five unknown jail employees. (*Id.* ¶¶ 2–4.)  Plaintiffs plead seven causes of action: (1) a § 1983 claim against all defendants for violating Gray's Fourteenth Amendment right to Due Process and Eighth Amendment freedom against Cruel and Unusual Punishment; (2) a *Monell* claim against DPSC and Vannoy for improperly assigning those with mental illness to the general population, for failing to properly monitor and protect those with mental illness, and for failing to prevent dangerous contraband from entering the prison; (3) claims against DPSC and Vannoy for negligent training, supervision, and retention; (4) a § 1983 claim against Vannoy and the unknown employees for supervisor liability; (5) a § 1983 claim against all defendants for failure to intervene; (6) a state law negligence claim against the individually named defendants; and (7) a wrongful death and survival action against all defendants. (*Id.* ¶¶ 32–65.)

Defendants DPSC and Vannoy now move to dismiss the claims against them. (Doc. 61.)  In sum, Defendants argue that (1) DPSC is entitled to Eleventh Amendment immunity, or, alternatively, Plaintiffs have no claim against DPSC; (2) the official capacity claims against

Vannoy should be dismissed to the same extent as the claims against DPSC; and (3) Vannoy is entitled to qualified immunity for the claims against him in his individual capacity. (*Id.*)

## II.    Relevant Standards

### A.    Rule 12(b)(1) Standard

In *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001), the Fifth Circuit explained the following about the Rule 12(b)(1) standard:

> Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).
>
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).
>
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .
>
> In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Id.* at 161.

**B. Rule 12(b)(6) Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Later, in *In re Great Lakes Dredge & Dock Co. LLC.*, 624 F.3d 201, 210 (5th Cir. 2010), the Fifth Circuit explained:

> To avoid dismissal [under Fed. R. Civ. P. 12(b)(6)], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting [*Twombly*, 550 U.S. at 570]). To be plausible, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 . . . . In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light

> most favorable to the plaintiff. [*Doe v. Myspace,* 528 F.3d 413, 418 (5th Cir. 2008)] (citing [*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)]). We do not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

*Id.* at 210.

Applying the above case law, our brother in the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, 55[0] U.S. at 556 [.] This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556 [.]

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at \*3 (W.D. La. Feb. 9, 2011) (citation omitted).

Afterward, in *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011), the Fifth Circuit explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim for relief is plausible on its face

> "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."

*Id.* at 796 (internal citations omitted).

Finally, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (internal citations and quotations omitted).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). However, "[a]lthough 'a court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also id.* (finding no abuse of discretion "in excluding . . . exhibits, even though some were referenced in [plaintiff's] pleading") (citing *Dorsey v. Portfolio Equities,*

*Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference)).

III.    **Discussion**

A.  **Claims Against DPSC and Against Vannoy in his Official Capacity**

*1. Parties' Arguments*

Defendants argue that DPSC is entitled to Eleventh Amendment immunity as an arm of the state. (Doc. 61-1 at 2–3.)  As a result, this court lacks jurisdiction over the claims against it. Likewise, Plaintiffs have no § 1983 claim against DPSC, say Defendants, because DPSC is not a "person" within the meaning of that statute. (*Id.* at 4.)  Moreover, the *Monell* doctrine does not apply to the state; rather, it applies only to local governments and municipalities. (*Id.* at 4–5.) Finally, Plaintiffs' official capacity claim against Vannoy must be dismissed because it is treated the same as a suit against his entity. (*Id.* at 5.)  Just as DPSC is entitled to Eleventh Amendment immunity, so too is Vannoy in his official capacity. (*Id.*)

Plaintiffs respond that qualified immunity is an affirmative defense for which Defendants bear the burden and which is rarely granted at the pleading stage. (Doc. 67 at 11.)  Plaintiffs then say that Defendants are not entitled to this immunity because this state receives federal funds. (*Id.* at 11–12.)  Further, the *Ex parte Young* exception to sovereign applies to allow these claims to proceed. (*Id.* at 19–20.)  Lastly, even if Defendants are entitled to Eleventh Amendment immunity, that shield does not stop individual capacity claims. (*Id.* at 25–26.)

Defendants respond that Plaintiffs have abandoned their *Monell* claims by failing to respond to Defendants' arguments. (Doc. 71 at 1–2.)  Moreover, Plaintiffs have, according to Defendants, misstated the law on the Eleventh Amendment, as the cases Plaintiffs rely upon all involve discrimination claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*Id.*

at 2–3.)  Additionally, Plaintiffs did not respond to DPSC's argument that it is not a "person" within the meaning of § 1983. (*Id.* at 3.)  Plaintiffs' reliance on *Ex parte Young* is also misplaced in that they bring claims only for monetary damages, not injunctive or declaratory relief. (*Id.* at 3–4.)  Defendants maintain that Plaintiffs blur the distinction between official capacity and individual capacity claims; Defendants seek dismissal of the official capacity claims against Vannoy based on the Eleventh Amendment, not qualified immunity, which applies only to individual capacity claims. (*Id.* at 4.)

### *2. Applicable Law*

Under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state[.]" U.S. Const. amend. XI. Thus, "[i]t is clear, of course, that in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).

Similarly, "the Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 101 (cleaned up). Accordingly, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cty. Bd. of Trs. for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)).

Indeed, "[t]he Supreme Court has 'held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted.' " *Griffin v. La. State Bd. of Nursing*, No. 21-303, 2021 WL 5239585, at *5 (M.D. La. Nov. 10, 2021) (deGravelles, J.) (quoting *Williams v. Louisiana*, No. 17-453, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019) (deGravelles, J.) (quoting *Med. RX/Sys., P.L.L.C. v. Tex. Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga*, 535 U.S. 613, 617 (2002)))). "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities." *Id.* (quoting *Williams*, 2019 WL 1003645, at *4 (internal citations and quotations omitted)).

Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123 [ ] (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity." *Aguilar*, 160 F.3d at 1054. "The [*Ex Parte Young*] Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law." *Id.* (citing *Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Id.* (citing *Saltz v. Tenn. Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

Nevertheless, "state officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception." *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir.), *cert. denied*, 141 S. Ct. 672 (2020) (citing *Pennhurst*, 465 U.S. at 106 (stating that the Court cannot "instruct[ ] state officials on how to conform their conduct to state law.")). Thus, the

Eleventh Amendment bars state law claims against states and state officials in their official capacity for damages *and* for injunctive and declaratory relief. *See id.* at 274–75.

### *3. Analysis*

Having carefully consider the matter, the Court will grant Defendants' motion on these claims.  The law in the Fifth Circuit is clear that DPSC is an "arm of the state" entitled to Eleventh Amendment immunity. *See Hanna v. LeBlanc*, 716 F. App'x 265, 268 (5th Cir. 2017) (per curiam) ("DPS & C, as a Louisiana executive department . . . [is] entitled to the Eleventh Amendment's protection." (citations omitted)); *see also Murray v. LeBlanc*, No. 21-592, --- F. Supp. 3d ----, 2022 WL 4361738, at *8 (M.D. La. Sept. 20, 2022) (deGravelles, J.) ("There is little dispute on this issue. Plaintiffs do not seriously argue that DPSC is not an 'arm of the state' entitled to Eleventh Amendment immunity, nor could it.").  Likewise, under § 1983, an official capacity claim is the equivalent of a claim against the entity of which the officer is an agent. *See Skinner v. Ard*, 519 F. Supp. 3d 301, 312 (M.D. La. 2021) (deGravelles, J.) (cleaned up).  Thus, both DPSC and Vannoy in his official capacity are entitled to Eleventh Amendment immunity. *See Murray*, 2022 WL 4361738, at *8 (dismissing all claims against state and state official in his official capacity except those allowed by *Ex parte Young*).

The Court rejects Plaintiffs' arguments to the contrary.  First, while Plaintiffs make some mention of qualified immunity, it is clear from Defendants' brief as a whole that Defendants' position on this issue is rooted in sovereign immunity. (*See* Doc. 71 at 1–5.)

Second, though it is true that "Congress can condition federal funding on a state's waiver of Eleventh Amendment immunity," *Nchotebah v. UTMB Corr. Managed Care*, No. 9:20-CV-00004-RC, 2020 WL 7053264, at *4 (E.D. Tex. Sept. 10, 2020*), report and recommendation adopted*, No. 9:20-CV-00004-RC, 2020 WL 6054400 (E.D. Tex. Oct. 14, 2020) (citing *Bennett-*

*Nelson v. La. Bd. of Regents*, 431 F.3d 448, 451, 454 (5th Cir. 2005)), "the federal statute must contain a 'clear' and 'unequivocal statement' to that extent to ensure that the state considers the cost of waiving its sovereign immunity in exchange for federal benefits," *id.* (quoting *Sossamon v. Texas*, 563 U.S. 277, 290–91 (2011)). "Not every statute contains such a clear statement." *Id.* *Cf. Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 379 (M.D. La. 2012) ("Unlike the Rehabilitation Act, the statutes involved in the instant case [such as the ADA, Title VII, ADEA, and FMLA] show no such intent [to abrogate immunity]."). Accordingly, the Court disagrees with Plaintiffs' assertion that Defendants' receipt of federal funds should be deemed a waiver of its Eleventh Amendment immunity with respect to § 1983 claims; that is to say, "[e]ven if Defendants receive federal funding, Congress has not made such receipt conditional on waiving immunity to §§ 1981 and 1983 suits." *Nchotebah,* 2020 WL 7053264, at *4 (finding that Texas Department of Criminal Justice did not waive sovereign immunity as to § 1983 claims). As in *Nchotebah*, *see id.*, Plaintiffs here rely on non-§ 1983 cases that do not trump Defendants' immunity in this case. *See Campbell v. Lamar Institute of Technology*, 842 F.3d 375 (5th Cir. 2016) (finding waiver of sovereign immunity in ADA and RA case); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005) (finding waiver in RA case). Thus, the receipt of federal funds does not constitute a waiver of DPSC's immunity.

Third, although Plaintiffs are correct that *Ex parte Young* is an exception to Eleventh Amendment immunity, *see, supra*, that doctrine does not save Plaintiffs' claims. Again, "[t]o meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar*, 160 F.3d at 1054 (cleaned up). Here, Plaintiffs assert only claims for monetary damages. (*See SAC*, Doc. 43 at 19

(praying for judgment, "including compensatory damages, punitive damages against the Defendants, any and all damages allowed by State and Federal law including attorney's fees under 42 U.S.C. §1988, pre-judgment interest, post-judgment interest, [and] attorney's fees"). Thus, *Ex parte Young* does not afford Plaintiffs relief. *See Garig v. Travis*, No. 20-654, 2022 WL 868519, at *8 (M.D. La. Mar. 22, 2022) (deGravelles, J.) (granting motion to dismiss, even though Plaintiff relied upon *Ex parte Young* in argument, because "the Amended Complaint [did] not reflect that the relief sought against the Attorney General [was] 'declaratory or injunctive in nature and prospective in effect' " but instead sought "recovery for various categories of monetary damages against all Defendants").

Fourth, Plaintiffs assert, "Protection afforded by Eleventh Amendment on state officials in Louisiana does not extend to officials whose acts are intentional or grossly negligent such as the actions of defendants in this case,[]" (Doc. 67 at 26 (citing, *inter alia*, *Babineaux v. Garber*, No. 18-0233, 2018 WL 4938851, at *5 (W.D. La. Oct. 11, 2018)), but there are two problems with this position.

First, in *Corn*, the Fifth Circuit said clearly, "state officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception." *See Corn*, 954 F.3d at 275. Thus, *Corn* tends to undermine *Babineaux*'s reasoning.

But, second, even putting *Corn* aside, *Babineaux* itself undercuts Plaintiffs' position. There, Plaintiffs argued that "a suit against a state officer in his or her individual capacity for money damages is not a suit against the state for purposes of Eleventh Amendment immunity." *Babineaux*, 2018 WL 4938851, at *4. Judge Hicks analyzed a line of cases from the Fifth Circuit discussing the relationship between Eleventh Amendment immunity and Louisiana's indemnification statute for state employees, La. Rev. Stat. § 13:5108.1. *Id.*

In one of the first of those cases, *Reyes v. Sazan*, 168 F.3d 158 (5th Cir. 1999), the Fifth Circuit "refused to dismiss personal capacity state law claims where a genuine issue of fact existed as to whether the official was entitled to indemnification under state law." *Id.* (citing *Reyes*, 168 F.3d at 163). "However, at the time of the *Reyes* decision, Louisiana's indemnification statute limited indemnity to situations where the damages did not result from an 'intentional wrongful act or gross negligence.' " *Id.* (citing La. Rev. Stat. § 13:5108.1).

But, following *Reyes* and the other authority discussed in *Babineaux*, "the Louisiana legislature amended its indemnification statute, Louisiana Revised Statute Section 5108.1, to require merely that the state official be 'free of criminal conduct' while engaged in his employment duties." *Id.* at \*5 (quoting La. Rev. Stat. § 13:5108(B)(3)). Judge Hicks concluded:

> In the instant case, the Plaintiffs have not alleged that LeBlanc was acting outside the course and scope of his employment, or that he was engaged in criminal conduct. Thus, applying the language of the statute, if LeBlanc is found liable to the Plaintiffs for violations of state law, he will be entitled to indemnification from the State of Louisiana. Therefore, under the current state of Fifth Circuit law, the relief Plaintiffs seek with regard to their state law claims against LeBlanc operates against the state and is therefore barred under the Eleventh Amendment

*Id.* at \*5 (cleaned up).

Similarly, here, there is no allegation that Vannoy acted outside the course and scope of his employment or engaged in criminal conduct. Thus, even assuming *Corn* did not preclude Plaintiffs' argument, *Babineaux* would.

For all these reasons, Defendants' motion will be granted. Plaintiffs' claims against DPSC and Plaintiffs' claims against Vannoy under § 1983 in his official capacity and under state law will be dismissed without prejudice.

### B.  Claims Against Vannoy in his Individual Capacity

#### *1. Parties' Arguments*

##### *a.*  Defendants' Original Memorandum (Doc. 61-1)

Defendants' final argument concerns qualified immunity.  They contend that the claims against Vannoy in his individual capacity should be dismissed, for a number of reasons. (Doc. 61-1 at 6.)

First, "Plaintiffs do not allege any specific facts that Mr. Vannoy or any of the other Defendants had any specific reason to know or be concerned that Kenny Veal posed a substantial risk to Shaquille Gray." (*Id.* at 7.) Rather, Plaintiffs make only conclusory allegations that Gray should not have been housed in the general population, even though he had been there for five years before the murder. (*Id.*)  This is not a case where a warden had notice of a problem, but rather a "single instance of random inmate violence against Gray occurring without any warning whatsoever or reason to believe Veal might pose a substantial or excessive risk to Gray." (*Id.*).

Second, supervisory liability requires personal involvement, and Plaintiffs fail to satisfy that burden. (*Id.* at 7–8.)  Here, there are no facts alleged that Vannoy was involved in the attack, nor is there any claim that Vannoy was involved in the decision to house Gray in the general population or to prevent Veal and other inmates from obtaining illicit drugs and weapons. (*Id.* at 8.)  "Plaintiffs' allegations against Mr. Vannoy amount to nothing more than a buck-stops-here argument that Vannoy, as the warden at the time of the incident, was responsible for everything that happened at the penitentiary." (*Id.*) "Such nonspecific, generalized allegations are insufficient as a matter of law to overcome the defense of qualified immunity." (*Id.*)

Third, Defendants argue that Plaintiffs fail to plead a casual connection between the 2015 decision to place Gray in the general inmate population and Veal's terrible attack five years later

in 2020. (*Id.* at 9.)  Plaintiffs point to no prior problems with Veal or other inmates during those five years. (*Id.*)  Further, there are no allegations that Gray had an issue with Veal during that time, that "Veal targeted Gray because of Gray's alleged mental health issues," or "that the attack was in any way causally related to Gray's alleged mental health issues." (*Id.*)  This was simply a "random instance of violence directed towards an inmate who happened to have a history of mental illness but who also had coexisted in the general population without any alleged problems for five years." (*Id.*)  Concerning the failure to search for contraband and follow rules regarding same, Plaintiffs make only "a result-oriented argument that because Mr. Gray was murdered by another inmate wielding a contraband shank, the warden must have been deliberately indifferent to Gray's safety." (*Id.* at 10.)  As to the allegation Vannoy failed to properly train the guards and staff at Angola, Plaintiffs require a pattern of similar violations, and, here, they have failed to provide it. (*Id.* at 10–11.)  Lastly, Vannoy cannot be liable under a theory of *respondeat superior* under § 1983. (*Id.* at 11.)

### b.  Plaintiffs' Opposition (Doc. 67)

Plaintiffs respond that they have adequately alleged a claim against Vannoy. (Doc. 67 at 13.)  Plaintiffs assert that *Farmer v. Brennan*, 511 U.S. 825 (1994) has two requirements for these claims: (1) that there be, objectively, a sufficiently serious deprivation, and (2) that Defendants have a culpable state of mind. (*Id.*)  Here, there's little dispute that the attack against Gray was objectively serious. (*Id.*)

Concerning the second requirement, the key is whether Defendants acted with deliberate indifference, and Plaintiffs say that Vannoy did so in this case. (*Id.* at 13–14.)  As to whether there was a substantial risk of harm:

> The Amended Complaint states in detail the particular conditions
> that existed at Angola which threatened the lives of inmates living

15

> there including, *inter alia*, misclassification and misplacement of
> inmates in the general population, inadequate supervision in the
> living areas, inadequate searches and monitoring of inmates,
> inadequate control of inmate movement, inadequate training of
> personnel, insufficient personnel, etc.

(*Id.* at 15 (citing *SAC* ¶¶ 15–28, Doc. 43).)  These allegations are sufficient in the Fifth Circuit to

satisfy *Farmer v. Brennan*.  (*Id.* (citations omitted).)

As to the knowledge of that risk of harm, Plaintiffs maintain that the key is whether Vannoy

was aware of facts from which the inference could be made that the risk of harm existed. (*Id.* at

16.)  "Here, Defendants' knowledge of serious lapses in security is unquestionable, as 'defendants

John and Jane Doe guards were themselves supplying the drugs, weapons and/or contraband to the

inmates,' as specifically alleged in the Complaint." (*Id.* at 16 (citing *SAC* ¶ 20, Doc. 43.)

With respect to Vannoy's failure to take action despite knowledge, Plaintiffs reference a

number of paragraphs in the *SAC* (specifically, *SAC* ¶¶ 17, 19, 20, 24, 25, 27 & 29, Doc. 43), but

they home in on ¶ 17, which purportedly "describes how Defendants were complicit in creating

the conditions which made Angola such an unsafe place to live." (*Id.*)

> Defendants violated their supervisory duties by assigning Mr. Gray
> to a dangerous dormitory despite his mental illness, failing to ensure
> that the dorm and inmates were safe and free from contraband and/or
> weapons that could be used in an attack, and by failing to ensure that
> the dormitory was properly monitored, and that the Decedent was
> kept safe.

(*Id.* at 17.)  Defendants also failed to adequately supervise the DPSC employees assigned to Gray's

block and failed to intervene to stop the illegal conduct taking place, including the contraband and

Gray's murder. (*Id.*)  Defendants also negligently failed to provide for Gray's protection by

incorrectly placing him in the general population and by violating their own rules and

recommendations of medical experts and sentencing officials. (*Id.*)

"Defendants' negligent acts of failing to properly classify and place Mr. Gray into a proper setting regarding his mental illness and to properly detect and confiscate contraband and to monitor inmates and keep them safe from harm caused the wrongful death of Shaquille Gray." (*Id.* at 18.) Plaintiffs point to the fact that, during Gray's trial, he was treated at hospitals that diagnosed him with mental illnesses and that his trial date had to be postponed and adjourned many times due to repeated hospitalizations for his mental illness. (*Id.*) Further, multiple doctors testified in Court about Gray's mental condition, and this testimony was accompanied by written reports relied upon during sentencing. (*Id.*) "[T]he Judge who sentenced Mr. Gray recommended that Mr. Gray serve the remainder of his sentence at the Steve Hoyle Intensive Substance Abuse Program rather than a traditional state prison." (*Id.* (emphasis omitted).) Before trial, Gray was segregated in Orleans Parish Prison because of his mental condition, and, after his sentence for robbery, he was also segregated from the general population at Hunt Correctional Facility. (*Id.*) "This clearly established that the DOC and its personnel were abundantly aware of Mr. Gray's mental condition and the special circumstances/measured warranted by same." (*Id.* (emphasis omitted).)

In sum, "[c]ontrary to Defendants' assertions, Plaintiff[s] ha[ve] stated cognizable claims for negligent employee supervision, training, and retention. Accordingly, Plaintiffs' claims against Defendant Vannoy should not be dismissed, because Plaintiff[s] ha[ve] alleged enough facts to state plausible claims of relief." (*Id.* at 19.)

As to qualified immunity, Plaintiffs assert:

> Defendant Vannoy's conduct as a public official, were [sic] not "objectively reasonable" under the circumstances. Defendant Vannoy is alleged to have acted unconstitutionally in failing to properly assign the decedent to a dormitory that was properly equipped to handle his diagnosed mental illness, in failing to properly monitor and protect the decedent from life-threatening harm, in failing to properly search and prevent dangerous contraband weapons from entering Angola, in failing to properly

> monitor the common areas and in failing to stop or intervene during
> the deadly assault and stabbing of Mr. Gray.
>
> The allegations clearly demonstrate no reasonable and/or objective
> excuse for Defendant Vannoy's catastrophic incompetence in the
> administration of Angola, and/or negligence in the hiring,
> supervision, and training of the individual officers responsible for
> the day-to-day enforcement of the policies ultimately responsible for
> the decedent's grisly murder.

(*Id.* at 21.)  Here, the law at issue was clearly established, even before *Farmer v. Brennan*. (*Id.* at 22.)  Plaintiffs maintain that the "the conditions in Angola were dangerous. Given these conditions, the murder of an inmate in cold blood was an inevitability; a catastrophe waiting to happen. No reasonable agency official with knowledge of this situation could hope to escape liability if they simply turned their back on the situation." (*Id.*)  Defendants do not try to show that the law was not clearly established or that their conduct was reasonable under that law. (*Id.* at 23.)  In any event, "no reasonable defendant could have believed that the policy of misclassification and misplacement of mentally-disabled inmates, and failure to monitor said inmates in an environment replete with violent assault[s] as a direct consequence of defendants' failure and/or refusal to adequately conduct searches for prohibited contraband was lawful under" the facts of this case. (*Id.* at 23.)

Plaintiffs also assert that they pled that Defendants' various failures took place in the "days and months preceding the decedent's murder, despite the Covid crisis that prevented visitors from entering Angola prison from March 2020 to the date the decedent was killed." (*Id.* at 24.)  Indeed, "a similar stabbing at Angola occurred the same morning as Mr. Gray's murder in another section of the prison." (*Id.* (citing *SAC* ¶¶ 17–18, Doc. 43).)  Plaintiffs posit that the ubiquitous presence of contraband during Covid demonstrates that the rules and procedures with respect to same "were woefully inadequate, deliberately ignored, and/or that the defendants John and Jane Doe guards

were themselves supplying the drugs, weapons and/or contraband to the inmates." (*Id.* (citing *SAC* ¶ 20, Doc. 67).) Plaintiffs point to other failures detailed in the complaint that led to Gray's death. (*Id.* at 24–25 (citing *SAC* ¶¶ 20–22, Doc. 67).)

Plaintiffs also contend that Vannoy violated Gray's due process rights by:

> failing to properly assign him to a dormitory that was properly equipped to handle his diagnosed mental illness, to properly monitor and protect Mr. Gray from life threatening harm, to properly search and prevent dangerous contraband weapons from being possessed by the murderous inmate, to properly monitor the common areas and to stop the vicious assault and stabbing.

(*Id.* at 25.) Plaintiffs close by urging denial of Defendants' motion.

### c.   Defendants' Reply (Doc. 71)

Defendants reply that Plaintiffs' arguments on qualified immunity miss the mark for a number of reasons. (Doc. 71 at 1.) First, "Plaintiffs do not allege any specific facts that Mr. Vannoy had any specific reason to know or be concerned that Kenny Veal posed a substantial risk to Shaquille Gray." (*Id.* at 6.) Defendants maintain that "Plaintiffs read *Farmer* too expansively," as, after that case, the Fifth Circuit purportedly requires that a prisoner complain about a specific threat to a supervisor to give him actual notice. (*Id.* (citing *Smith v. Breoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).) "Plaintiffs made no such allegation," and, indeed, "they acknowledge Gray had been housed with the general population for five (5) years before he was murdered, clearly implying there was no reason for Warden Vannoy to believe Gray faced a substantial or excessive risk." (*Id.*)

Plaintiffs' complaints about staffing also fall short. (*Id.*) The cases they rely upon are distinguishable, as each involved ongoing conditions and systematic violations spanning many years. (*Id.* at 6–7.)

Defendants next reiterate that supervisor liability requires personal involvement. (*Id.* at 7.) Again, "Their conclusory allegations against Mr. Vannoy amount to nothing more than a buck-stops-here argument that Vannoy, as the warden at the time of the incident, was responsible for everything that happened at the penitentiary." (*Id.*)

Defendants then re-urge that Plaintiffs "failed to plead any causal connection between the 2015 decision to house Gray in the general inmate population and Veal's vicious attack five (5) years later in 2020." (*Id.*)  Again:

> Plaintiffs have not alleged Gray had prior problems with Veal or with any other inmates during those five years, nor have they alleged Veal targeted Gray because of Gray's alleged mental health issues, nor have they alleged the attack was in any way causally related to Gray's alleged mental health issues. Even accepting their allegations as true and interpreting those allegations in a light most favorable to Plaintiffs, they have alleged nothing more than a random instance of violence directed by an inmate towards another inmate who happened to have a history of mental illness but who also had coexisted in the general population without any alleged problems for five years. The Plaintiffs have not even attempted to connect the dots between Gray's alleged mental illness and Veal's attack.

(Doc. 71 at 7–8.)  Thus, even if there was personal involvement, Plaintiffs' claims would fail for lack of causation. (*Id.* at 8.)

Lastly, as to the failure to train and staff claims, Plaintiffs must do more than plead isolated incidents. (*Id.*)  However, Plaintiffs making such claims must typically allege a pattern of similar violations. (*Id.*)

### *2. Applicable Law*

#### *a.*  Qualified Immunity Generally

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d

339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

> *b.*   First Prong: Constitutional Violation and Supervisor Liability

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.' " *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)); *see also Porter*, 659 F.3d at 446 ("In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed]

to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*))).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Est. of Davis*, 406 F.3d at 381 (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal quotation marks and citation omitted in *Smith*)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

However, to demonstrate deliberate indifference, a "claimant need not show that a[n] . . . official acted or failed to act believing that harm actually would befall [a plaintiff]; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (describing deliberate indifference in Eighth Amendment context for inmate failure-to-protect claims). Further, "[w]hether a[n] . . . official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a[n] . . . official knew of a substantial risk from the very fact that the

risk was obvious." *Id.* (citing 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 335 (1986) ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of")).  As the Fifth Circuit explained after *Farmer*:

> [W]hile a prisoner normally must complain about a specific threat to a supervisory official in order to give actual notice to that official, we have never required that a supervisory official be warned of the precise act that the subordinate official subsequently commits. Rather, all that we (and the Supreme Court) have required is that the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.

*Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (cleaned up) (finding on interlocutory appeal that the court "lack[ed] jurisdiction to resolve the factual question of whether [plaintiff's] letters were specific enough to satisfy this standard").

Additionally, "[t]o satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.' " *Est. of Davis*, 406 F.3d at 381 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur Co.*, 245 F.3d 447, 459 (5th Cir. 2001))).  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," a supervisor might reasonably be found to be deliberately indifferent." *Id.* at 381–82 (quoting *City of Canton*, 489 U.S. at 390).  Elaborating, the Fifth Circuit has explained:

> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small,* for example, we held that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference,

which usually requires a plaintiff to "demonstrate a *pattern of violations.*" Similarly, in *Snyder v. Trepagnier,* we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the "plaintiff must demonstrate 'at least a pattern of *similar incidents in which the citizens were injured.*' " Moreover, a showing of deliberate indifference requires that the Plaintiffs "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights."

Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]

\* \* \*

We do not suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference. It is true that there is a so-called "single incident exception," but it is inherently "a narrow one, and one that we have been reluctant to expand." "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." . . .

We did find a single incident to suffice in *Brown v. Bryan County*, concluding that there was an utter failure to train and supervise. We later observed that we found liability in *Brown* for a single incident when the county "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness," while also noting that "there is a difference between a complete failure to train, as in [*Brown v. Bryan County*], and a failure to train in one limited area."

*Id.* at 382–83, 385–86 (citations omitted).

### c.  Second Prong: Unreasonable under Clearly Established Law

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). "Because

24

the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotations omitted)).

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779–80 (2014)).

Phrased another way, "[w]hen considering a defendant's entitlement to qualified immunity, [the Court] must ask whether the law so clearly and unambiguously prohibited his conduct that '*every* reasonable official would understand that what he is doing violates [the law].' " *McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017) (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))). "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Id.* at 696 (quoting *Morgan*, 659 F.3d at 371–72 (internal quotations omitted) (quoting *al-Kidd*, 563 U.S. at 742)). "Where no controlling authority specifically prohibits a

defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Id.* (quoting *Morgan*, 659 F.3d at 372).

### 3. Analysis

Plaintiffs contend that Vannoy acted with deliberate indifference in failing to take certain actions, including properly classifying Gray, housing him with the general population and not somewhere equipped to handle his mental illness, detecting and confiscating contraband, monitoring common areas, and stopping or intervening to prevent the assault. (*See SAC* ¶ 33, Doc. 43.)  But, to impose liability, Plaintiffs must allege that Vannoy (1) affirmatively participated in the acts that cause the constitutional deprivation, or (2) implemented unconstitutional policies that caused the constitutional injury. *Porter*, 659 F.3d at 446.  Since there's no allegation of personal participation in the assault, Plaintiffs must show (1) that there was a causal link between Vannoy's alleged failures and the violation of Gray's rights, and (2) that these failures amounted to deliberate indifference. *See Est. of Davis*, 406 F.3d at 381.  Having carefully considered the matter, the Court finds that Plaintiffs fail to satisfy both requirements.

As to deliberate indifference, Plaintiffs assert in a conclusory manner that each defendant was "well aware of Mr. Gray's psychological illness and did nothing to protect him from other inmates." (*SAC* ¶ 11, Doc. 43.)  To support this claim, Plaintiffs allege that:

(1) during Gray's trial, he was treated at several facilities that diagnosed him with mental illness, (*id.*);

(2) Gray's trial was postponed and adjourned several times because of repeated hospitalizations necessitated by his mental condition, (*id.*);

(3) multiple doctors testified at trial about his severe mental illness and prepared written reports about same, which reports were relied upon by the Judge who sentenced him

with a recommendation to serve the rest of his sentence at Hoyle Intensive Substance

Abuse Program instead of a traditional state prison, (*id.* ¶ 12);

(4) Gray was segregated before trial and after sentencing from other inmates because of

his mental condition, (*id.* ¶ 13);

(5) the fact that Gray's mental illness and need for segregation was "well documented in

his records," (*id.* ¶ 15);

(6) Vannoy "ignore[ed]" Gray's medical needs and "reject[ed] the recommendations of the

medical experts and the reasoned opinion of the trial judge" in placing Gray in the

general population without adequate supervision and protection, (*id.* ¶ 16);

(7) "[i]n the days and months" before Gray's death, "despite the Covid crisis that prevented

visitors from coming into Angola prison from March 2020 to" Gray's death in

September 2020, "numerous instances of contraband were discovered, (*id.* ¶ 18);

(8) "a similar stabbing at Angola occurred the same morning as Mr. Gray's murder in

another section of the prison," thus demonstrating that the DPSC's rules were not

followed or enforced, were deliberately ignored, or that the guards themselves

smuggled the contraband into the prison, (*id.* ¶¶ 18–20); and

(9) "Vannoy was the most senior [DPSC] official onsite throughout the entire incident, . .

. was responsible for the actions and/or omissions of the aforementioned jail

guards/jailers[,] [and] was also responsible for ensuring that Mr. Gray was kept safe,"

(*id.* ¶ 30.)

But, even construing the *SAC* in a light most favorable to Plaintiffs and drawing reasonable

inferences in their favor, the Court finds that there are crucial gaps in these allegations that warrant

the granting of Defendants' motion.  Again, to find deliberate difference, "the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Est. of Davis*, 406 F.3d at 381 (emphasis added, citation omitted).

Here, Plaintiffs do little to connect the dots between Vannoy and the information about Gray's medical condition or about the presence of contraband. That is to say, Plaintiffs fail to allege facts actually demonstrating, or from which the inference could be reasonably drawn, (1) that Vannoy knew what happened before or during Gray's trial; (2) that Vannoy was aware of Gray's segregation at other facilities; (3) that Vannoy knew the contents of Gray's medical or other records; and (4) that Vannoy was aware of the contraband problem at the prison and the "similar stabbing" that took place, or any other stabbings that take place at the facility. Without even "upon information and belief" statements, the Court cannot conclude that Vannoy actually "dr[e]w the inference" that a substantial risk of harm occurred. Phrased another way, with these deficiencies, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Thompson*, 764 F.3d at 502–03 (citations omitted), and Defendants' motion must be granted. *See Colbert v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-28, 2018 WL 344966, at *12 (M.D. La. Jan. 9, 2018) (Jackson, J.) (dismissing claims against warden for failure to supervise and monitor by parents of pretrial detainee following his murder at the hands of another inmate because "Plaintiffs do not allege any foundational facts from which it can be plausibly inferred that Defendants provided inadequate training or supervision, or that they were aware that current training practices were likely to result in a constitutional violation."); *Flowers v. Dupont*, No. 16-0263, 2017 WL 3529262, at *4 (M.D. La. June 9, 2017) (Wilder-Doomes, M.J.) (recommending dismissal of supervisor claims against assistant wardens for lack of deliberate indifference because there was "no suggestion that either [defendant] was present when the

incident occurred, had any notice whatever that Plaintiff faced danger at the hands of the offending co-inmate, or had ever had any involvement in [the subordinate's] training so as to support a finding of liability"), *report and recommendation adopted*, No. 16-263, 2017 WL 3528538 (M.D. La. Aug. 16, 2017); *Cf. Howard v. Vannoy*, No. 18-570, 2021 WL 2046701, at *4 (M.D. La. May 21, 2021) (Dick, C.J.) (affirming dismissal of supervisor liability claims against Vannoy because, even if plaintiff had alleged prior incidents involving the danger of appliances being used in dormitories in a risky way, "Plaintiff would similarly have to allege facts supporting the inference that Warden Vannoy had notice of these incidents and the accompanying risk but was deliberately indifferent to the known risk," and "[n]o such allegations [were] made."); *Graves v. Cain*, No. 16-292, 2019 WL 5092939, at *2 (M.D. La. Oct. 11, 2019) (Jackson, J.) (denying motion to dismiss claims against assistant warden because plaintiff alleged that plaintiff told assistant warden that another inmate had threatened plaintiff's life and assistant warden had not taken measures to prevent the attack); *Henderson v. LeBlanc*, No. 16-265, 2018 WL 2050149, at *9 (M.D. La. May 2, 2018) (deGravelles, J.) (granting motion to dismiss supervisor claim against Vannoy involving failure to provide medications because "the allegations against [him] amount[] to little more than claims of vicarious liability for which the Plaintiff cannot recover under § 1983").

Similarly, "[t]o satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.' " *Est. of Davis*, 406 F.3d at 381. Further, the Fifth Circuit has "stressed that a single incident is usually insufficient to demonstrate deliberate indifference," and prior incidents must be adequately numerous and similar. *See id.* at 382–83. Here, the only comparable exemplars identified by Plaintiffs involve the presence of contraband. But, (1) Plaintiffs provide no details about the "numerous instances of contraband" being

29

"discovered," (*SAC* ¶ 18, Doc. 43), thus failing the similarity requirement, and (2) Plaintiffs list only one other instance of contraband being used in a stabbing, (*id.* ¶¶ 18–20), thus failing the numerosity requirement, particularly given the absence of allegations making this case comparable to *Brown*, *see Est. of Davis*, 406 F.3d at 385–86 (comparing an "utter failure to train and supervise" and failure "to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness" with "a failure to train in one limited area."). Again, without more, Plaintiffs' *SAC* simply fails to plead deliberate indifference, so Defendants' motion could be granted on this ground alone. *See Flowers*, 2017 WL 3529262, at *4 ("A single incidence of wrongdoing, however, does not generally support an inference that training practices implemented by prison officials are unconstitutional as a whole." (citing *Bolden v. Young*, No. 08-560, 2009 WL 1651333, at *4 (M.D. La. June 10, 2009) (finding warden was entitled to qualified immunity because plaintiff "point[ed] to only a single incident to bolster" his view of inadequate training and because, "[i]n this Court's view, this [was] an insufficient assertion of supervisory liability, and to the contrary, the plaintiff appear[ed] to be using the mere conclusory assertion of a failure to train as an attempted end run around the ban against respondeat superior liability in § 1983 cases").

However, the Court also finds an additional ground for dismissing at least some of these claims: Plaintiffs' complaint fails to sufficiently allege causation. As Defendants argue, the *SAC* alleges no facts, beyond mere conclusions, to establish that Gray's murder had anything to do with his mental condition, assignment, or monitoring rather than being a random act of violence perpetrated by one inmate against another. This is particularly true considering, as Defendants contend, Gray was housed for five years in the general population without incident. Further, Plaintiffs fail to allege, other than by conclusion, that Vannoy himself (as opposed to some other subordinate) caused any violation with respect to the contraband. For these additional reasons,

Defendants' motion will be granted. *See Moore v. State of Louisiana*, 210 F.3d 369 (5th Cir. 2000) (per curiam) (reversing denial of qualified immunity to warden because, there was "no allegation at all of *any* policy, let alone one that was constitutionally defective and 'the moving force of the constitutional violation' alleged in [plaintiff's] complaint" and because plaintiff's "conclusional allegations of supervisory involvement in the use of excessive force . . . [were] insufficient to state any claim against . . . [the warden] under § 1983"); *Bush v. Russ*, No. 08-255, 2008 WL 4664019, at *3 (M.D. La. Oct. 21, 2008) (granting warden's motion to dismiss on claim of failure to protect prisoner from attack by other inmate because plaintiff failed to allege personal involvement or causal connection between attack and warden, who was not responsible for actions of his subordinates).

### C.  Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on

31

> technicalities requires that the plaintiff be given every opportunity
> to cure a formal defect in the pleading. This is true even when the
> district judge doubts that the plaintiff will be able to overcome the
> shortcomings in the initial pleading. Thus, the cases make it clear
> that leave to amend the complaint should be refused only if it
> appears to a certainty that the plaintiff cannot state a claim. A district
> court's refusal to allow leave to amend is reviewed for abuse of
> discretion by the court of appeals. A wise judicial practice (and one
> that is commonly followed) would be to allow at least one
> amendment regardless of how unpromising the initial pleading
> appears because except in unusual circumstances it is unlikely that
> the district court will be able to determine conclusively on the face
> of a defective pleading whether the plaintiff actually can state a
> claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, though Plaintiffs previously amended their complaint, they did not do so in response to a ruling by this Court assessing the sufficiency of their claims. Thus, "the Court will act in accordance with the 'wise judicial practice' and general rule and grant Plaintiff[s'] request." *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 373 (M.D. La. 2022) (deGravelles, J.) (quoting *Watkins v. Gautreaux*, 515 F. Supp. 3d 500, 519 (M.D. La. 2021) (deGravelles, J.) (citing *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 641–42 (M.D. La. 2018) (deGravelles, J.))); *see also Murray v. LeBlanc*, No. 21-592, --- F. Supp. 3d. ----, 2022 WL 4361738, at *23 (M.D. La. Sept. 20, 2022) (reaching same result); *Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result) (citing, inter alia, *JMCB, supra*).  While it is unlikely that Plaintiffs can successfully overcome the Eleventh Amendment hurdle, the Court finds a fair possibility that they could cure at least some of the problems with the individual capacity claims against Vannoy.  Thus, there are even stronger reasons to grant leave to amend than the usual case. *See Jordan*, 593 F. Supp. 3d at 373 ("the Court believes an amendment is particularly warranted here, as Plaintiffs may be able to cure some of the deficiencies detailed above").

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 61) filed by defendants the Department of Public Safety and Corrections and Darrel Vannoy is **GRANTED**, and all claims by Plaintiffs against DPSC and Vannoy are **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs shall be given twenty-eight (28) days from the issuance of this order to file a new amended complaint to cure the deficiencies outlined in this ruling.  Failure to do so will result in the dismissal of Plaintiffs' § 1983 claims against Vannoy in his individual capacity with prejudice.

Signed in Baton Rouge, Louisiana, on <u>March 7, 2023</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**