UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KELLY GRAY, ET AL.**

**VERSUS**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, ET AL.**

**CIVIL ACTION**

**NO. 21-536-JWD-RLB**

## RULING AND ORDER

This matter comes before the Court on the second *Motion to Dismiss* (Doc. 80) ("*Motion*") filed by defendants the Department of Public Safety and Corrections ("DPSC") and Darrel Vannoy (collectively, "Defendants"). Plaintiffs, Kelly Gray and Michael Foley, individually and on behalf of all heirs-at-law and wrongful death beneficiaries of Shaquille Gray ("Gray"), deceased and The Estate of Shaquille Gray (collectively, "Plaintiffs"), oppose the *Motion*. (Doc. 67.) Defendants have filed a reply. (Doc. 71.) Oral argument is not necessary. The Court has carefully considered the law, the allegations of *Plaintiff[s'] Third Amended Complaint for Damages* ("*TAC*") (Doc. 75) and its exhibits, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted in part and denied in part.

### I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2011, decedent Shaquille Gray was arrested and charged with robbery. (*TAC* ¶ 7, Doc. 75.) During Gray's trial and sentencing, he was incarcerated in Orleans Parish Prison and Hunt Correctional Center. (*Id.*) On September 2, 2015, he pled guilty and received a ten-year sentence. (*Id.*)

While these events were happening, Gray was diagnosed with schizophrenia. (*Id.*) As a result, the Court and State recommended that Gray serve his sentence at an intensive treatment

facility. (*Id.*) Despite this, he was sent to Louisiana State Penitentiary in Angola, Louisiana. ("LSP" or "Angola"). (*Id.*)

Plaintiffs claim that prison officials knew that Gray was previously diagnosed with schizophrenia, yet they placed him in the "general population of inmates" instead of a "segregated psychiatric or medical ward." (*Id.*) According to Plaintiffs, this decision led to Gray being murdered by another inmate named Kenny Veal, who killed Gray during an attack on September 1, 2020. (*Id.*) Veal was under the influence of drugs and armed with two knives, all of which was prohibited at LSP. (*Id.*) Veal stabbed Gray more than twenty times in the dormitory of the general population unit to which Gray had been assigned. (*Id.*)

Gray's parents brought this suit on his behalf against DPSC, Vannoy, Attorney General Jeff Landry, and five John Doe jail employees. (*Id.* ¶¶ 2–4.) Landry has been voluntarily dismissed from the action, (Doc. 83), and this *Motion* is brought only by DPSC and Vannoy, (Doc. 80).

On March 7, 2023, the Court granted Defendants' original *Motion to Dismiss* (Doc. 61) in full and dismissed each of Plaintiffs' claims without prejudice. (*Ruling and Order* ("*Ruling*"), Doc. 74 at 1; *Gray v. La. Dep't of Pub. Safety & Corr.*, No. 21-536, 2023 WL 2416370 (M.D. La. Mar. 8, 2023) (deGravelles, J.).) More specifically, the Court found (1) that Plaintiffs' claims against DPSC and against Vannoy in his official capacity should be dismissed based on Eleventh Amendment immunity, (Doc. 74 at 10–13); and (2) that the claims against Vannoy in his individual capacity should be dismissed based on qualified immunity, (*id.* at 28–31). The details of the *Ruling* (particularly on the second issue) will be discussed below. In any event, the Court granted Plaintiffs leave to amend to cure the deficiencies of their complaint. (*Id.* at 33.)

On April 5, 2023, Plaintiffs filed the *TAC*. (Doc. 75.) Plaintiffs assert the following claims: (1) a § 1983 claim alleging a violation of Gray's Eighth and Fourteenth Amendment rights, (*id.* ¶¶

2

42–43); (2) a *Monell* claim against DPSC and Vannoy in his official capacity, (*id.* ¶¶ 44–49); (3) a negligent training, supervision, and retention claim against DPSC and Vannoy, (*id.* ¶¶ 50–54); (4) a supervisor liability claim under § 1983, (*id.* ¶¶ 55–58); (5) a § 1983 claim failure to intervene, (*id.* ¶¶ 59–62); (6) a negligence claim against the individually named defendants, (*id.* ¶¶ 63–65); and (7) wrongful death and survival claims under Louisiana state law, (*id.* ¶¶ 66–74). Plaintiffs pray for, *inter alia*, (1) a "declaratory judgment that the actions, conduct and practices of Defendants . . . violate" federal and state law; (2) "[a]n injunction and order permanently restraining Defendants from engaging in such unlawful conduct; (3) an award of compensatory and punitive damages; and (4) costs and attorney's fees. (*Id.* at 17–18.)

Defendants now bring this renewed *Motion to Dismiss*. (Doc. 80.) Defendants essentially argue that Plaintiffs have not cured the deficiencies of the prior complaint detailed in the last *Ruling*.

## II.     RULE 12(B)(1) MOTION: CLAIMS AGAINST DPSC AND AGAINST VANNOY IN HIS OFFICIAL CAPACITY

This Court laid out the standard for evaluating motions brought under Rule 12(b)(1) in its prior *Ruling*. *See Gray*, 2023 WL 2416370, at *2 (quoting *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)). That standard need not be repeated here.

Defendants now contend that Plaintiffs made no attempt to correct the deficiencies of the prior complaint with respect to Eleventh Amendment immunity. (Doc. 80-1 at 2–4.) DPSC remains a defendant, with the same claims asserted against it. (*Id.*) For the same reasons given in the prior *Ruling*, the Court should dismiss these claims. (*Id.*) Plaintiffs respond that they "understand that the claims against DSPC are subject to sovereign immunity." (Doc. 88 at 12.) Defendants' reply largely repeats prior arguments. (*See* Doc. 89.)

3

The Court agrees with Defendants. The Court previously described and applied the law on Eleventh Amendment immunity, *see Gray*, 2023 WL 2416370, at *4–6, and that reasoning applies with equal force to Plaintiffs' current claims for damages against DPSC and Vannoy in his official capacity. Plaintiffs now assert claims of declaratory and injunctive relief in the *TAC* (Doc. 75 at 17), but it is unclear whether that relief is "prospective in effect," which is required to satisfy the *Ex Parte Young* exception to Eleventh Amendment immunity. *See Gray*, 2023 WL 2416370, at *5 (quoting *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)). Given Plaintiffs' concession that their claims are "subject to sovereign immunity," the Court concludes that the relief is not "prospective in effect" and that *Ex Parte Young* does not apply. Thus, all claims against DPSC and Vannoy in his official capacity are dismissed without prejudice. Further, because Plaintiffs have failed to cure the deficiencies, despite being given an opportunity to do so, and because further amendment would be futile in light of Plaintiffs' concession, no leave to amend will be granted for these claims. *See Skinner v. Ard*, 519 F. Supp. 3d 301, 322 (M.D. La. 2021) (deGravelles, J.) (denying leave to amend in light of failure to cure prior deficiencies and futility of further amendment).

### III.   RULE 12(B)(6) MOTION: CLAIMS AGAINST VANNOY IN HIS INDIVIDUAL CAPACITY

#### A.  Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570)).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' " *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.' " *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.' " *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].' " *Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which

judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### B. Parties' Arguments

Defendants contend that Vannoy is entitled to qualified immunity because Plaintiffs failed to cure the deficiencies in the prior complaint. (Doc. 80-1 at 6–7.) First, Plaintiffs did not allege that "Gray's murder had anything to do with his mental condition." (*Id.* at 7.) Plaintiffs murder was caused solely by Veal's "drug-induced 'homicidal rage,'" which was a "single random instance of inmate violence occurring without warning," and Plaintiffs' allegations to the contrary are conclusory. (*Id.* at 8.)

Second, Plaintiffs did not allege deliberate indifference because they failed to plead a pattern of sufficiently numerous and similar instances of contraband violations. (*Id.* at 9.) Plaintiffs refer to six other violent inmate deaths and attach investigative reports of same, but there is no mention in the reports that the other inmates died from contraband or stabbing like Gray. (*Id.* at 10.) Without more, there is only a single incident of alleged misconduct, and that is insufficient. (*Id.*)

Third, again, Plaintiffs failed to allege that Vannoy caused the violations with respect to contraband. (*Id.* at 11.) This Court previously rejected paragraphs that were nearly identical to what is now pled in the *TAC*, and Plaintiffs' allegations remain conclusory and insufficient. (*Id.* at 11–12.) Likewise, Vannoy's alleged inadequate training and supervision did not cause the harm. (*Id.* at 12–13.) Vannoy cannot be held liable for *respondeat superior* liability. (*Id.* at 13.)

Defendants conclude:

> Completely devoid of any specificity, Plaintiffs' allegations amount to nothing more than a result-oriented, backdoor attempt to invoke the doctrine of *res ipsa loquitur*: because Kenny Veal was in possession of a contraband knife, Warden Vannoy must necessarily have been negligent. Such allegations are insufficient as a matter of law.

(*Id.* at 13.)

Plaintiffs respond that they have adequately pled claims against Vannoy in his individual capacity. (Doc. 88 at 3.) Plaintiffs quote their *TAC* at length before asserting that they have sufficiently alleged that Vannoy "knew about Mr. Gray's mental health diagnosis and his prior segregation at other facilities." (*Id.* at 3–7 (quoting *TAC* ¶¶ 12–17, 20–29).) "It is manifestly unreasonable to posit that Defendant Vannoy, as the warden of Angola would not have made the inference that a substantial and serious harm could result under these facts." (*Id.* at 7.)

Moreover, Plaintiffs say Vannoy is not entitled to qualified immunity. (*Id.* at 8.) "The unlawful nature of subjecting inmates to unreasonable risks of violence at the hands of other inmates has been established as early as 1994, well before the events alleged in this case." (*Id.* at 10 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994).) Plaintiffs assert:

> As described above and detailed in the [*TAC*], the conditions in Angola were dangerous. Given these conditions, the murder of an inmate in cold blood was an inevitability; a catastrophe *waiting* to happen. No reasonable agency official with knowledge of this

7

> situation could hope to escape liability if they simply turned their back on the situation.

(*Id.* at 10.) Plaintiffs continue:

> [N]o reasonable defendant could have believed that the policy of misclassification and misplacement of mentally-disabled inmates, and failure to monitor said inmates in an environment replete with violent assault as a direct consequence of defendants' failure and/or refusal to adequately conduct searches for prohibited contraband was lawful under these circumstances.

(*Id.* at 10–11.) Plaintiffs close by highlighting the effect of contraband at the facility, the other incidents that happened, and how Vannoy's inadequate training and supervision caused these problems. (*Id.* at 11.)

Defendants respond that Vannoy remains entitled to qualified immunity. (Doc. 89 at 2.) They say that Plaintiffs offer nothing beyond mere conclusions that the 2015 decision to house Gray in the general population led to Veal's attack five years later in 2020. (*Id.* at 3.)

> As Defendants noted, the [*TAC*] does not allege that Gray had prior problems with Veal or with any other inmates during those five years, does not allege that Veal targeted Gray because of Gray's alleged mental health issues, and does not allege that the attack was in any way causally related to Gray's alleged mental health issues.

(*Id.*) Again, Plaintiffs' allegations that the attack had something to do with Gray's medical condition, assignment, or monitoring are conclusory. (*Id.* at 3–4.)

Additionally, Plaintiffs have, according to Defendants, ignored their arguments about prior incidents that were sufficiently numerous and similar. (*Id.* at 4.) Plaintiffs make no attempt to explain why or how the prior incidents were like the instant one. (*Id.* at 4–5.)

Likewise, Defendants also say that Plaintiffs have failed to rebut their position on contraband. (*Id.* at 5.) Specifically, Defendants argued that Vannoy was not liable for the mere fact

8

that Veal was in possession of a knife and that Plaintiffs' allegations may have changed stylistically but not substantively. (*Id.*)

### C. Applicable Law

As with the Rule 12(b)(1) part of this *Motion*, the relevant law was described in the Court's prior *Ruling*. *See Gray*, 2023 WL 2416370, at *11–14. The Court will repeat some, but not all, of it for ease of reference, with some slight tweaks.

"Qualified immunity involves answering two questions: (1) 'whether the officer violated a constitutional right,' and (2) 'whether the "right at issue was 'clearly established' at the time of [the] alleged misconduct." ' " *Parker v. LeBlanc*, 73 F.4th 400, 406–07 (5th Cir. 2023) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (alterations in original))). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "When, as here, a plaintiff alleges a failure to train or supervise, 'the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts

to deliberate indifference.' " *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)); *see also Porter*, 659 F.3d at 446 ("In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*))).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Est. of Davis*, 406 F.3d at 381 (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Smith*, 158 F.3d at 912 (internal quotation marks and citation omitted in *Smith*)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

However, to demonstrate deliberate indifference, a "claimant need not show that a[n] . . . official acted or failed to act believing that harm actually would befall [a plaintiff]; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (describing deliberate indifference in Eighth

Amendment context for inmate failure-to-protect claims). Further, "[w]hether a[n] . . . official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a[n] . . . official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (citing 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.7, p. 335 (1986) ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of")). As the Fifth Circuit explained after *Farmer*:

> [W]hile a prisoner normally must complain about a specific threat to a supervisory official in order to give actual notice to that official, we have never required that a supervisory official be warned of the precise act that the subordinate official subsequently commits. Rather, all that we (and the Supreme Court) have required is that the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.

*Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (cleaned up) (finding on interlocutory appeal that the court "lack[ed] jurisdiction to resolve the factual question of whether [plaintiff's] letters were specific enough to satisfy this standard").

Additionally, "[t]o satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.' " *Est. of Davis*, 406 F.3d at 381 (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001))). " '[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' a supervisor might reasonably be found to be

11

deliberately indifferent." *Id.* at 381–82 (quoting *City of Canton*, 489 U.S. at 390). Elaborating, the Fifth Circuit has explained:

> We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference. In *Cousin v. Small*, for example, we held that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a *pattern of violations.*" Similarly, in *Snyder v. Trepagnier*, we held that "proof of a single violent incident ordinarily is insufficient" for liability. Rather, the "plaintiff must demonstrate 'at least a pattern of *similar incidents in which the citizens were injured.*' " Moreover, a showing of deliberate indifference requires that the Plaintiffs "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights."
>
> Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]
>
> * * *
>
> We do not suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference. It is true that there is a so-called "single incident exception," but it is inherently "a narrow one, and one that we have been reluctant to expand." "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." ...
>
> We did find a single incident to suffice in *Brown v. Bryan County*, concluding that there was an utter failure to train and supervise. We later observed that we found liability in *Brown* for a single incident when the county "failed to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness," while also noting that "there is a difference between a *complete failure to train*, as in [*Brown v. Bryan County*], and a failure to train in one limited area."

*Id.* at 382–83, 385–86 (citations omitted).

12

As to the second part of the qualified immunity analysis, "[t]o determine whether a right is 'clearly established,' we 'first look[ ] to Supreme Court precedent and then to our own.' " *Parker*, 73 F.4th at 407 (quoting *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (quotation marks and citation omitted)). "Ultimately, the touchstone is fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Crittindon*, 37 F.4th at 186 (quotation marks and citations omitted)).

### D. Analysis

Here, Defendants do not seriously dispute that the law on this issue has been clearly established since *Farmer v. Brennan*, so the Court focuses its attention on the key question: do Plaintiffs sufficiently allege that Vannoy committed a constitutional violation?

In short, the Court finds that they have. That is, having carefully considered the matter, the Court finds that Plaintiffs have cured the deficiencies of the prior complaint and adequately pled that Vannoy acted with deliberate indifference.

To elaborate, the Court previously dismissed Plaintiffs' claims against Vannoy because (a) Plaintiffs had failed to "connect the dots between Vannoy and the information about Gray's medical condition or about the presence of contraband" so as to establish deliberate indifference, (Doc. 74 at 28–29); (b) Plaintiffs had failed show a pattern with sufficiently similar and numerous prior instances of other violations, (*id.* at 29–30); and (c) Plaintiffs did not establish causation, as "the [operative complaint] allege[d] no facts, beyond mere conclusions, to establish that Gray's murder had anything to do with his mental condition, assignment, or monitoring rather than being

13

a random act of violence perpetrated by one inmate against another" (*id.* at 30–31.) But, Plaintiffs have overcome each of these problems.

On the first issue, Plaintiffs now plead upon information and belief that Vannoy was aware of Gray's medical condition. Specifically, the *TAC* alleges that (a) Vannoy was the Warden at Angola from the time of Gray's incarceration there until his death; (b) Vannoy was "fully familiar and aware of [ ] Gray's jail file," including that he was diagnosed with psychological problems during his trial and was repeatedly treated at various medical centers that necessitated many adjournments and postponements of Gray's trial; (c) that many people from DPSC testified about Gray's "severe mental illness" during his criminal case, prepared written reports about same that were then relied upon by the sentencing judge, and (d) that the judge recommended that Gray serve the remainder of his sentence at an intensive substance abuse program rather than a traditional state prison. (*TAC* ¶¶ 11–13, Doc. 75.) Plaintiffs also claim upon information and belief that Vannoy was aware of Gray's prior placements in various facilities in segregation before his trial from 2014 to 2015. (*Id.* ¶ 14.) Despite the specific knowledge of Gray's mental illness, special needs, and required segregation, say Plaintiffs, Vannoy assigned Gray to the Main Prison at Angola in the general population. (*Id.* ¶¶ 15, 17–18.)

Similarly, Plaintiffs specifically plead, upon information and belief, that there was a connection between Vannoy and the presence of contraband in the prison. According to the *TAC*, Vannoy was responsible for implementing policies related to banning certain contraband and searching inmates for same, including weapons and drugs. (*Id.* ¶ 20.) Vannoy purportedly knew about "numerous other violent inmate deaths that had occurred at Angola during [his] tenure as Warden," including "at least six (6) inmate homicides" that happened during that time. (*Id.* ¶ 21.) Plaintiffs provide the names of these victims, the dates of the incidents, and the inmate death

14

reports for same. (*Id*.; Doc. 75-1.) Vannoy was allegedly aware of the investigation and reports that resulted from each of these deaths. (Doc. 75.) Moreover, "in the days and months preceding [ ] Gray's death, despite the Covid crisis that prevented visitors from coming into Angola prison from March 2020 to the date [ ] Gray was killed, numerous instances of contraband were discovered," including "various objects that could be used as weapons being in the possession of inmates and drugs that could alter the minds of inmates being found." (*Id.* ¶ 25.) "In fact, a similar stabbing at Angola occurred the same morning as [ ] Gray's murder in another section of the prison." (*Id.*) Plaintiffs claim that Vannoy did not properly follow the rules designed to prevent dangerous items from being possessed by inmates. (*Id.* ¶ 26.) Further, the training and supervision was allegedly "so obviously inadequate and poorly implemented by [ ] Vannoy" that prison employees were prevented "from detecting, identifying and/or preventing the items that could be used as weapons from entering the jail or from being possessed by guards, inmates or detainees." (*Id.* ¶ 28.) The failure to follow policies led to the highly predictable consequence that weapons would be in the prison that could be used to murder inmates like Gray. (*Id.*) Plaintiffs claim that Defendants were deliberately indifferent "[b]y failing to ensure that [ ] Gray was housed in a unit for inmates with mental illness, and by failing to ensure that Angola was free from dangerous contraband, including knives, stabbing instruments and other items that could be used to inflict deadly force[.]" (*Id.* ¶ 38.) Vannoy "abandoned his role as warden . . . by failing to perform his required job duties, including properly assigning inmates with mental illness to the correct housing and by failing to enforce the proper search protocols and training of jail guards to conduct contraband searches." (*Id.* ¶ 39.)

  Again, "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

15

he must also draw the inference." *Est. of Davis*, 406 F.3d at 381. A supervisory official need not "be warned of the precise act that the subordinate official [(or, in this case, inmate)] subsequently commits. Rather, all that [this circuit] (and the Supreme Court) have required is that 'the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.' " *Smith*, 158 F.3d at 912 (cleaned up).

Construing the allegations of the *TAC* as a whole and drawing reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have pled "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that Vannoy knew of both Gray's medical condition and the problems with contraband, that these issues posed a substantial risk of harm to Gray, and that Vannoy failed to take reasonable steps to abate that harm. *See Calhoun*, 855 F. App'x at 919–20. This is particularly true given the fact that the Court's task at this point is "not to evaluate the plaintiff's likelihood of success" but rather only to decide "whether the plaintiff has stated a legally cognizable claim that is plausible[.]" *Doe ex rel. Magee*, 675 F.3d at 854 (cleaned up).

For similar reasons, the Plaintiffs have cured the next problem with the prior complaint by alleging a sufficient number of prior, similar incidents. Specifically, Plaintiffs' exhibit to the *TAC* shows the following inmate deaths at Angola: (1) on September 2, 2015, Michael Woods died was caused by "Homicide," specifically a "Pulmonary Thromboembolie . . ." (Doc. 75-1 at 3–5); (2) Adam Billiot died on March 25, 2017, from homicide caused by "multiple blunt force injuries," (*id.* at 7–8); (3) Dolan Franklin died on August 19, 2018, by "Homicide" caused by "brain injury" (*id.* at 11–12); (4) Derrick Williams died on October 20, 2018, died on October 20, 2018, by "Accidental injury by other" due to "Traumatic brain injury," (*id.* at 15–16); (5) Major Jones died on January 4, 2020, due to "Homicide-Blunt force injury to head" (*id.* at 18); and (6) Kintad

16

Phillips died on August 17, 2020, from "Homicide-Multiple blunt force injuries & strangulation," (*id.* at 19). These come in addition to Gray's own murder, which occurred on September 1, 2020, by "Homicide-stabbed." (*Id.* at 20.)

Defendants maintain that these incidents are too dissimilar and that the descriptions given rule out the use of contraband (in either the form of weapons or contraband), but Defendants misconstrue the relevant standards. "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and *construe the complaint in the light most favorable to the plaintiff*." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210 (emphasis added) (citation omitted). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw *the reasonable inference* that the defendant is liable for the misconduct alleged." *Hamilton*, 2023 WL 5316716, at *3.

Here, it is reasonable to infer—and certainly plausible—that the brain trauma suffered by these victims was caused in part by impermissible weapons or were triggered by episodes involving drugs. This is particularly true considering that Gray's own Record of Death omits reference to Veal's use of drugs before the attack or the precise object that Veal used to stab Gray (*i.e.*, whether it was contraband smuggled into the prison or simply a tool at the prison used by inmates). (*See* Doc. 75-1 at 20.) Whether Plaintiffs ultimately survive summary judgment or prevail with a jury is a question for another day; here they need only plead "enough facts[] to raise a reasonable expectation that discovery will reveal evidence" of deliberate indifference, and they have done so. *See Calhoun*, 855 F. App'x at 919–20.

Finally, Plaintiffs have cured the deficiencies related to causation. All of the above allegations demonstrate that Gray needed to be segregated and that there were severe, systematic problems with weapons and drugs at Angola. And it is reasonable to infer, when construing the

17

allegations in a light most favorable to Plaintiffs, that subjecting a vulnerable individual like Gray to a dangerous environment, with illegal drugs and weapons, would place Gray at a substantial risk of harm to which he would (and did in fact) fall victim.

Defendants argue that Gray's death was caused solely by Veal's violent attack and that Gray's presence in the general population for five years without incident undercuts Plaintiffs' causation argument, but the Court rejects this theory. The fact that Gray escaped harm for five years between when he was initially incarcerated and when the attack occurred does not gainsay the fact that Gray was subjected to such risk of harm and that Vannoy's failure to properly house Gray and control contraband at the prison caused the attack. Again, a reasonable jury could reach this conclusion, when construing the *TAC* in a light most favorable to Plaintiffs.

For all these reasons, the Court finds that Plaintiffs have stated viable claims against Vannoy in his individual capacity. In this respect, the *Motion* is denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 80) filed by defendants the Department of Public Safety and Corrections and Darrel Vannoy is **GRANTED IN PART** and **DENIED IN PART**. The *Motion* is **GRANTED** in that all claims by Plaintiffs against DPSC and Vannoy in his official capacity are **DISMISSED WITHOUT PREJUDICE**. In all other respects, the *Motion* is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 6, 2024.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**